Frederick MOFFITT, Appellant,

v.

STATE of Indiana, Appellee.

No. 49A02–0310–CR–910.

Court of Appeals of Indiana.

Sept. 23, 2004.

Publication Ordered Nov. 5, 2004.

Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant Frederick Moffitt ("Moffitt") was convicted following a jury trial of possession of cocaine as a Class C felony,[1] possession of marijuana as a Class A misdemeanor,[2] and resisting law enforcement as a Class A misdemeanor.[3] Moffitt pleaded guilty to being a habitual offender and the trial court sentenced him to an aggregate term of twenty-one years incarceration. Moffitt initiated a direct appeal from his convictions, but subsequently sought and was granted permission to dismiss his appeal without prejudice to pursue post-conviction relief. His petition for post-conviction relief was denied. Moffitt now appeals, alleging errors arising both from the direct appeal and from the denial of his petition for post-conviction relief.[4] We affirm.

### Issues

On direct appeal, Moffitt raises two issues, which we restate as:

I. Whether the trial court abused its discretion by admitting evidence obtained from an illegal search and seizure; and

II. Whether the trial court erred by allegedly excluding a belatedly disclosed defense witness absent a showing of bad faith on the part of Moffitt and substantial prejudice to the State.

In addition, on appeal from the denial of his petition for post-conviction relief, Moffitt raises two issues, which we restate as:

I. Whether Moffitt's guilty plea to the habitual offender count was knowingly made; and

II. Whether Moffitt received effective assistance of trial counsel.

### Facts and Procedural History

On June 9, 2001, at approximately 6:30 p.m., Indianapolis Police Officer Scott Emminger ("Officer Emminger") was on routine patrol in the East District of Indianapolis near the intersection of 10th Street and Oakland Avenue. When he turned his vehicle onto Oakland Avenue, Officer Emminger saw "three (3) white females and one (1) black male engaged in basically a pile up fight" in the middle of the street. Tr. at 30. Brandi Thompson ("Thompson") was at the bottom of the "pile," Crystal Anderson ("Anderson") was on top of Thompson, Moffitt was on top of Anderson, and Chastity Ray ("Ray") was the top person on the "pile." Officer Emminger witnessed Thompson and Anderson punching each other and, while he believed that Moffitt was attempting to break up the fight between Thompson and Anderson, he observed Moffitt hit Thompson. Officer Emminger did not see Ray hit anybody. Officer Emminger radioed

1. Ind.Code § 35–48–4–6.

2. Ind.Code § 35–48–4–11.

3. Ind.Code § 35–44–3–3.

4. In *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977), our supreme court held that an appellant from a criminal conviction may seek to bring a petition for post-conviction relief pending resolution of his appeal by obtaining leave from the appellate court. If the appellate court preliminarily determines that the motion has sufficient merit, the entire case is remanded for consideration of the petition for post-conviction relief. *Id.* at 156, 368 N.E.2d at 1151. Such remand terminates the appeal. *Id.* If the trial court then denies the petition for post-conviction relief, the petitioner may appeal the denial. In this new appeal any of the issues raised in the original appeal may be incorporated. *Id.; see also Hyppolite v. State*, 774 N.E.2d 584, 602 (Ind.Ct.App.2002), *trans. denied.*

for backup and then gave a "verbal command to break it up." Tr. at 34. Officer Emminger placed Thompson and Anderson in handcuffs and told everybody that they were going to jail for disorderly conduct unless they could talk him out of it. Officer Emminger directed Moffitt to drop the rag that he had in his hand, which he did. Subsequently, Officer Emminger conducted a pat-down search of Moffitt and found a small lump in Moffitt's right watch pocket that he believed to be a controlled substance. Officer Emminger removed the lump from Moffitt's pocket and found a small amount of marijuana in a baggie. Officer Emminger ordered Moffitt to put his arms behind his back and, in response, Moffitt attempted to flee the scene. Officer Emminger and other back-up officers successfully subdued Moffitt and then the officers found a small baggie of crack cocaine in Moffitt's front left pocket. Officer Emminger also found a partially burned marijuana cigarette in the rag that Moffitt had dropped earlier that evening.

On June 11, 2001, the State charged Moffitt with possession of cocaine as a Class C felony, possession of marijuana as a Class A misdemeanor, resisting law enforcement as a Class A misdemeanor, and with being a habitual offender.[5] On June 26, 2001, in an affidavit, Thompson maintained that: (1) she and Anderson were fighting over some crack cocaine; (2) Moffitt—an acquaintance—tried to break up the fight; and (3) Anderson handed Moffitt the rag. Likewise, Anderson, by affidavit, attested that: (1) she and Thompson were fighting over some crack cocaine; (2) Moffitt—a friend—tried to break up the fight; (3) she "had a rag wrapped around crack cocaine and marijuana and handed it with her broken necklace to [Moffitt] who, without looking at the time[ ], reflexively put

them in his pocket;" and (4) the illegal substances found on Moffitt by the police were the same that she had possessed. Appellant's App. at 38b. In addition, on August 23, 2001, Moffitt filed a motion in limine regarding evidence of Moffitt's criminal record and prior involvement in illegal substances.

Prior to a jury trial, Moffitt's counsel, Steven Geller ("Geller"), apparently did not file a witness list, naming Anderson and Thompson as witnesses, with the trial court. At a jury trial, Anderson testified that she and Thompson were fighting over some crack cocaine that they had found on the ground and that Thompson had placed the cocaine in a rag and was holding it in her hand. Anderson also testified that Moffitt, who did not see the crack cocaine, attempted to separate her and Thompson and that Anderson gave Moffitt a necklace that Thompson had "snapped" off of her neck, along with the rag containing crack cocaine. Anderson further testified that Moffitt placed the rag in his pocket without opening it to see what was inside. Thompson did not testify at trial.

At the conclusion of trial, the jury found Moffitt guilty of the offenses of possession of cocaine, possession of marijuana, and resisting law enforcement. The trial court entered judgments of conviction on the jury's verdicts and Moffitt pleaded guilty to being a habitual offender. The trial court then sentenced Moffitt to the custody of the Indiana Department of Correction for a term of eight years for the possession of cocaine conviction, one year for the possession of marijuana conviction, and one year for the resisting law enforcement conviction. The trial court enhanced the possession of cocaine sentence by twelve years for Moffitt's status as a habitual offender and ordered Moffitt to serve

5. Ind.Code § 35–50–2–8.

the possession of cocaine sentence consecutive to the resisting law enforcement conviction and concurrent to the possession of marijuana conviction, for an aggregate sentence of twenty-one years.

Moffitt appealed his convictions and sentences to the Indiana Court of Appeals. However, on February 19, 2002, Moffitt moved to dismiss the appeal without prejudice and to petition the trial court for post-conviction relief, which another panel of this court granted. On June 11, 2003, Moffitt filed a petition for post-conviction relief alleging that he did not receive effective assistance of trial counsel and that his guilty plea was not knowingly, intelligently, and voluntarily made. After conducting an evidentiary hearing, the post-conviction court denied Moffitt's petition for relief. This appeal ensued.

### Discussion and Decision

#### I. Direct Appeal

#### A. Admission of Evidence: Improper Search and Seizure

On direct appeal, Moffitt first claims that his convictions should be reversed because the trial court abused its discretion by admitting the cocaine and marijuana evidence, which were the fruits of an illegal search and seizure. The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent a showing that the trial court abused its discretion. *Williams v. State*, 754 N.E.2d 584, 587 (Ind.Ct.App. 2001), *trans. denied*. Upon review of a trial court's ruling with respect to the validity of a search and seizure, we will consider the evidence most favorable to

the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Id.* If the evidence is conflicting, we consider only the evidence favorable to the ruling and will affirm if the decision is supported by substantial evidence of probative value. *Id.*

■ In the present case, Moffitt argues that the cocaine and marijuana evidence resulted from an illegal search and seizure and, thus, should not have been admissible at trial. The State counters that the evidence is admissible because the search was incident to a lawful arrest. To determine whether the trial court abused its discretion by admitting the cocaine and marijuana evidence, we must first decide whether the warrantless search of Moffitt's person was reasonable.

■ The Fourth Amendment to the United States Constitution provides, in pertinent part, that: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. CONST. Amend. IV.[6] The Fourth Amendment's protection against unreasonable searches and seizures has been extended to the States through the Fourteenth Amendment. *See Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998). As a general rule, the Fourth Amendment prohibits a warrantless search. *Id.* Consequently, when a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. *Id.* at 465.

---

**6.** Moffitt contends that the warrantless search of his person violated the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. However, because Moffitt does not argue that the search and seizure provision in the

Indiana Constitution requires a different analysis from the federal Fourth Amendment, his state constitutional claim is waived, and we consider only the federal claim. *See, e.g., White v. State*, 772 N.E.2d 408, 411 (Ind. 2002).

■ A search incident to a lawful arrest is one such exception to the warrant requirement. *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *reh'g denied; see also White v. State,* 772 N.E.2d 408, 411 (Ind.2002). Under this exception, an officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control. *White,* 772 N.E.2d at 411. Our initial inquiry under this exception to the warrant requirement is to determine whether the arrest itself was lawful. *Gibson v. State,* 733 N.E.2d 945, 954 (Ind.Ct. App.2000). Indiana Code Section 35–33–1–5 defines an arrest as the "taking of a person into custody, that he may be held to answer for a crime." An arrest occurs when a police officer "interrupts the freedom of the accused an[d] restricts his liberty of movement." *Sears v. State,* 668 N.E.2d 662, 667 (Ind.1996). In addition, even when a police officer does not tell a defendant that he or she is under arrest prior to a search, that fact does not invalidate a search incident to an arrest as long as there is probable cause to make an arrest. *Jackson v. State,* 588 N.E.2d 588, 590 (Ind.Ct.App.1992). Furthermore, the subjective belief of the police officer that he may not have probable cause to arrest a defendant when he handcuffs the defendant has no legal effect. *Gibson,* 733 N.E.2d at 954.

■ Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect committed a criminal act. *Griffith v. State,* 788 N.E.2d 835, 840 (Ind.2003); *see also* Ind. Code § 35–33–1–1(a). The amount of evidence necessary to satisfy the probable cause requirement for a warrantless arrest is determined on a case-by-case basis. *Pe-*

*terson v. State,* 674 N.E.2d 528, 536 (Ind. 1996), *reh'g denied, cert. denied,* 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998). However, an unlawful arrest cannot be the foundation of a lawful search. *Regan v. State,* 590 N.E.2d 640, 644 (Ind. Ct.App.1992). Indeed, evidence obtained as a direct result of a search conducted after an illegal arrest is excluded under the fruit of the poisonous tree doctrine. *Jackson v. State,* 669 N.E.2d 744, 749 (Ind. Ct.App.1996).

■ The determination of probable cause is a mixed question of law and fact. *Earles v. Perkins,* 788 N.E.2d 1260, 1264–65 (Ind.Ct.App.2003). When facts sufficient to create probable cause are undisputed, as they are in this case, probable cause is a question of law. *Id.* Accordingly, although we generally review a trial court's decision to admit evidence despite a motion to suppress under an abuse-of-discretion standard, the ultimate determination whether Officer Emminger had probable cause to initiate an arrest is reviewed de novo. *Crabtree v. State,* 762 N.E.2d 241, 244 (Ind.Ct.App.2002).

Here, Officers Emminger had probable cause to arrest Moffitt for disorderly conduct based upon his involvement in the multi-person altercation, which occurred in the middle of the street—i.e., Officer Emminger saw Moffitt strike Thompson. *See, e.g.,* Ind.Code § 35–45–1–3 (defining the offense of disorderly conduct as "[a] person who recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct ... commits disorderly conduct, a Class B misdemeanor"). In addition, prior to the search in question, Officer Emminger informed all of the individuals involved in the altercation that he intended to arrest them for disorderly conduct unless they were able to give him a reason not to. The fact that Moffitt was not under arrest for disorderly conduct at

the time of the search does not alter our finding of probable cause. Rather, as long as probable cause exists to make an arrest, the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search. *See Santana v. State,* 679 N.E.2d 1355, 1360 (Ind.Ct.App.1997) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)).

Because probable cause to arrest Moffitt for disorderly conduct existed prior to the search in question, the search of Moffitt's person, as well as the rag that had been in his immediate control, was lawful as a search incident to an arrest. *See, e.g., White,* 772 N.E.2d at 411 (holding that under the search incident to an arrest exception, an officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control). As such, the cocaine and marijuana evidence seized from Moffitt's pockets and the rag were admissible at trial. Thus, the trial court did not abuse its discretion by admitting such evidence.

### B. *Exclusion of a Witness*

 Moffitt next argues that the trial court erroneously excluded Thompson as a witness because she was not listed as a witness on any witness list. To support this assertion, Moffitt directs us to his defense counsel's testimony to the post-conviction court that Thompson was excluded as a witness after the State objected to her testimony on grounds that she was not listed as a defense witness. In response, the State contends that Moffitt waived any allegation of error on this issue because he failed to supplement the record pursuant to Indiana Appellate Rule 31.

 Initially, we observe that the appellant bears the burden of presenting a record that is complete with respect to the issues raised on appeal. *Ford v. State,* 704 N.E.2d 457, 461 (Ind.1998), *reh'g denied.*

Indiana Appellate Rule 31 establishes a procedure for assembling a record on appeal when no transcript of the hearing is available. In particular, Section A of Rule 31 provides that:

> Party's Statement of Evidence. If no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection. The party shall then file a motion to certify the statement of evidence with the trial court or Administrative Agency. The statement of evidence shall be attached to the motion.

Section B gives the opposing party fifteen days to respond to the proposed statement of evidence and Sections C and D allow the trial court or administrative agency to either certify the statement of evidence or to refuse to certify the statement and, instead, file an affidavit setting forth its recollection of the disputed statements or conduct. The material then becomes a part of the clerk's record. Compliance with Rule 31 sustains the appellant's burden of presenting a complete record on appeal. *Ford,* 704 N.E.2d at 461.

 Here, Moffitt did not comply with Indiana Appellate Rule 31 regarding recreating a statement of evidence, allowing the State a reasonable time to respond, and providing the trial court the opportunity to certify his statement of evidence or, in the alternative, to prepare an affidavit setting forth its recollection of the disputed statements. Instead, on direct appeal, Moffitt relies solely upon Geller's testimony that the trial court excluded Thompson as a witness because she was not listed on the defendant's witness list. The problem, however, with Geller's testimony—which was under oath—is that it was presented to the post-conviction court and not the

trial court. As such, we cannot review such testimony on the direct appeal portion of this appeal; rather, we will review Geller's testimony in the second half of this appeal, which is devoted to Moffitt's claim for post-conviction relief, to determine whether Moffitt received effective assistance of trial counsel. As such, we agree with the State that Moffitt waived any error regarding the exclusion of Thompson's testimony by failing to provide a complete record for our review.[7]

## II. Post–Conviction Appeal

### A. Standard of Review

Post-conviction procedures do not afford defendants the opportunity for a "super-appeal." *Benefiel v. State*, 716 N.E.2d 906, 911 (Ind.1999), *reh'g denied, cert. denied*, 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). Rather, they are "special, quasi-civil remedies whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal." *Berry v. State*, 483 N.E.2d 1369, 1373 (Ind.1985). The petitioner bears the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993), *reh'g denied*. As such, a petitioner who has been denied post-conviction relief faces a rigorous standard of review. *Benefiel*, 716 N.E.2d at 912. To prevail on appeal, the petitioner must demonstrate that the evidence as a whole "leads unerringly and unmistakably to a decision opposite that reached by the trial court." *Prowell v. State*, 741 N.E.2d 704, 708 (Ind. 2001). Stated differently, we will disturb a

post-conviction court's decision only where the evidence is uncontradicted and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Miller v. State*, 702 N.E.2d 1053, 1058 (Ind.1998), *reh'g denied, cert. denied*, 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000).

Upon reviewing a petition for post-conviction relief, we may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court, i.e., the sole judge of the evidence and the credibility of the witnesses. *Blunt–Keene v. State*, 708 N.E.2d 17, 19 (Ind.Ct.App.1999). Moreover, our supreme court recently emphasized that "[i]n post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). With this law as our guide, we now review Moffitts claims of error.

### B. Analysis

#### 1. Voluntariness of Habitual Offender Guilty Plea

Moffitt maintains that the post-conviction court erred by denying his petition for post-conviction relief because his plea was not voluntarily, intentionally, and knowingly made. It is well settled that "one of the consequences of pleading guilty is that the defendant loses the ability to challenge his conviction on direct appeal; post-conviction relief remains as the proper vehicle for challenging the

---

**7.** We also note that an offer of proof is required to preserve an error in the exclusion of a witness's testimony. *Dowdell v. State*, 720 N.E.2d 1146, 1150 (Ind.1999). An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony and the potential for prejudice if it is excluded. *See id.* Accordingly, if Moffitt failed to make an offer of proof at trial, he has waived any error in the exclusion of Thompson as a witness. *Id.*

guilty plea." *Beaudry v. State*, 763 N.E.2d 487, 490 (Ind.Ct.App.2002).

■ On review of a guilty plea, we look at all of the evidence before the post-conviction court. *Hendrickson v. State*, 660 N.E.2d 1068, 1072 (Ind.Ct.App.1996). If the evidence exists to support the post-conviction court's determination that the guilty plea was voluntary, intelligent and knowing, we will not reverse. *Id.* When a guilty plea is attacked because of alleged misinformation concerning sentencing, the issue of the validity of such plea is determined by the following two-part test: (1) whether the defendant was aware of actual sentencing possibilities; and (2) whether the accurate information would have made any difference in his decision to enter the plea. *Jackson v. State*, 676 N.E.2d 745, 752 (Ind.Ct.App.1997), *trans. denied.*

Moffitt contends that he would not have entered into his guilty plea regarding his status as a habitual offender had he known that he could potentially receive an enhanced sentence of up to and including twelve years. Rather, his argument continues, he believed that the greatest enhanced sentence that he could receive was eight years. However, our review of the record reveals that the trial court advised Moffitt of the constitutional rights that he would be waiving by entering into a guilty plea, including the right to a jury trial, the right against self-incrimination, and the right to cross-examine witnesses. The trial court then informed Moffitt as follows:

> ... Sir the penalty for a habitual offender on a class C felony is anywhere from between 4 and 12 years additionally to your sentence. It is a nonsuspendable penalty. Do you understand the penalty provision here sir?

Tr. at 129. To this inquiry, Moffitt replied, "[y]es I do." *Id.* This colloquy between the trial court and Moffitt demonstrates that Moffitt was aware that, by pleading guilty to the habitual offender charge, he faced an enhanced sentence anywhere between four and twelve years. Accordingly, the post-conviction court did not err by finding that Moffitt voluntarily, intentionally, and knowingly entered into the guilty plea.

### 2. Ineffective Assistance of Counsel

The second issue raised on post-conviction appeal is whether Moffitt received effective assistance of trial counsel. Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland.* *Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind.1999) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind.1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind.1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*,

466 U.S. at 697, 104 S.Ct. 2052. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.*

Further, under the *Strickland* test, counsel's performance is presumed effective. *Douglas,* 663 N.E.2d at 1154. A petitioner must present convincing evidence to overcome the strong presumption that counsel provided adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Broome v. State,* 694 N.E.2d 280, 281 (Ind.1998).

In the present case, Moffitt argues that his trial counsel rendered ineffective assistance because counsel: (1) failed to timely file a witness list that included Thompson as a defense witness; (2) failed to ensure that a proper record was made regarding the trial court's exclusion of Thompson as a witness; (3) failed to object to the exclusion of Thompson as a witness; (4) failed to prepare Moffitt to testify at trial; (5) failed to object to the State's questioning of Moffitt regarding prior convictions; (6) failed to have Anderson and Thompson testify at the suppression hearing; and (7) failed to ensure that Moffitt understood the terms of his habitual offender plea agreement. We now consolidate and address these arguments.

### a. The Exclusion of Thompson as a Witness

 Moffitt first argues that his trial counsel rendered ineffective assistance by failing to: (1) timely file a witness list; (2) ensure that a proper record was made regarding the trial court's exclusion of Thompson as a witness; and (3) object to the exclusion of Thompson as a witness. As previously mentioned our review on this issue is hindered because the trial record lacks any reference to the trial court's exclusion of Thompson as a witness.[8]

Nevertheless, at the post-conviction hearing, Geller testified that Thompson did not testify at trial because "[s]he was precluded by State's objection." P–CR Tr. at 5. The following discussion ensued between Moffitt's post-conviction counsel and Geller:

Q: Okay and do you remember what the bases of that objection?

[Geller:] That she was not listed as a State's witness, excuse me as a Defense witness.

Q: And did you file a witness list?

[Geller:] I don't remember if we did or not, but it was my contention that there had been some pretrial motions that were well known if there was a trial they were going to be called.

*Id.* From this colloquy, we cannot conclude that Geller failed to object to the exclusion of Thompson as a witness. Rather, it appears that Geller contended that the State would not suffer prejudice by the inclusion of Thompson as a witness because the State had notice of Thompson and Anderson as witnesses well in advance of trial.

---

**8.** Indiana Trial Rule 74 provides the trial court with the discretion to record "any and all oral evidence and testimony given in all causes and hearings, including both questions and answers, and all rulings of the judge in respect to the admission and rejection of evidence and objections thereto and the recording of any other oral matters occurring during the hearing in any proceeding."

However, even assuming that Geller rendered ineffective assistance by failing to timely file a witness list, ensure that a proper record was made regarding the trial court's exclusion of Thompson as a witness, and object to the exclusion of Thompson as a witness, Moffitt has failed to show that he was prejudiced by Geller's deficient performance. Rather, the record before us reveals that, at trial, Anderson testified that she and Thompson were involved in an altercation over some crack cocaine that they had found on the ground and that Thompson had placed the cocaine in a rag that Thompson was holding in her hand. Anderson also testified that Moffitt, who did not see the crack cocaine, attempted to separate her and Thompson and that Anderson gave Moffitt a necklace and the rag containing crack cocaine. Anderson further testified that Moffitt placed the rag in his pocket without opening it to see what was inside.

In addition, Moffitt testified that, while he was attempting to separate Anderson and Thompson, Anderson handed him a rag and some gold chains and told him to put them in his pocket, which he did. Moffitt also testified that, after he put the items in one of his pockets, he continued to break up the altercation between the women. Moffitt further explained that, prior to his involvement in the fight, he did not have any marijuana or cocaine on his person and that the rag must have fallen out of his pocket during the fight.

Further, had Thompson testified at trial, presumably, her testimony would have been consistent with her June 26, 2001 affidavit, wherein she asserted that: (1) she and Anderson were fighting over some crack cocaine; (2) Moffitt—an acquain-

tance—tried to break up the fight; and (3) Anderson handed Moffitt the rag. In the absence of this testimony, which is consistent—in large part—with Anderson's and Moffitt's testimonies, our charge is to determine whether Moffitt has demonstrated a reasonable probability that, but for counsel's unprofessional errors and the resultant exclusion of Thompson's testimony, the result of his jury trial would have been different.

In the present case, Moffitt was charged with and convicted of possession of cocaine, possession of marijuana, and resisting law enforcement. Thompson's affidavit does not concern the resisting law enforcement charge and, thus, Moffitt has failed to show a reasonable probability that, even with Thompson's testimony at trial, the jury would have found him not guilty of resisting law enforcement. Likewise, in her affidavit, Thompson does not reference the marijuana that was found in Moffitt's right watch pocket nor the marijuana cigarette that was found in the rag. Rather, Thompson merely asserts that she and Anderson were fighting over some crack cocaine and that Anderson handed Moffitt the rag. Accordingly, Moffitt has failed to show a reasonable probability that, with Thompson's trial testimony, the jury would have acquitted him of the offense of possession of marijuana.

However, with respect to the possession of cocaine charge, Thompson would have testified that Moffitt—an acquaintance as opposed to a friend—attempted to break up an altercation between her and Anderson over some crack cocaine and that, during the fight, Anderson handed Moffitt the rag. To convict Moffitt of possession of cocaine as a Class C felony, the State was required to prove that Moffitt knowingly possessed more than three

grams of cocaine. *See* Appellant's App. at 37; Ind.Code § 35–48–4–6. Because Officer Emminger found the cocaine at issue in Moffitt's front left pocket, the only issue at trial was whether Moffitt *knowingly* possessed the cocaine. Thompson's testimony, which is consistent with Anderson's and Moffitt's testimonies, does not demonstrate that Moffitt unknowingly possessed the cocaine at issue. Instead, it merely discloses that she and Anderson were fighting over some crack cocaine and that Anderson gave Moffitt a rag. Thus, Moffitt has failed to show that, with Thompson's testimony—even in light of the fact that she was an acquaintance and not a friend—the jury would have determined that he unknowingly possessed the cocaine and, thus, would have found him not guilty of possession of cocaine. Accordingly, Moffitt has failed to demonstrate that he received ineffective assistance of trial counsel on this issue.

### b. *Preparing Moffitt for Trial and Failing to make Objections*

■ Moffitt next asserts that his trial counsel rendered ineffective assistance because he failed to prepare Moffitt to testify at trial and, further, failed to object to the State's questions regarding Moffitt's prior criminal history. At trial, during his direct examination, Moffitt testified that the marijuana found in his possession did not belong to him because he "can't even smoke." Tr. at 93. On cross-examination, the following discussion ensued between the State and Moffitt:

> [State:] Yes. [Moffitt,] you indicated that you can't smoke, what can't you smoke?
>
> \* \* \* \* \*
>
> [Moffitt:] Because I was on probation.
>
> [State:] What can't you smoke?

> [Moffitt:] I can't smoke nothing. I mean marijuana, he said he had a joint in there, I was on probation, I can't have none of that.
>
> [State:] Okay, you are on probation. What are you on probation for?
>
> [Moffitt:] Conspiracy.
>
> [State:] Conspiracy to what?
>
> [Moffitt:] Dealing in cocaine.

Tr. at 94.

On redirect, Geller asked Moffitt about the consequences of failing a drug test while he is on probation, to which Moffitt replied that he would be returned to the penitentiary. In response to Geller's questions, Moffitt also informed the jury that had he known that the rag contained cocaine, he would never have put it in his pocket because "[t]hat is part of his stipulation of probation not to be around ... nobody or be in contact with nobody doing drugs." *Id.* at 95. On re-cross, the following colloquy occurred between the State and Moffitt:

> [State:] [Moffitt] isn't it true that on February 11, of this year, you were at a location that had narcotics in it?
>
> \* \* \* \* \*
>
> [Moffitt:] Well, I was present when narcotics—yes.
>
> [State:] Isn't it a fact, isn't it true you were charged with possession of cocaine and possession of marijuana as a result of that?
>
> [Moffitt:] Yes it's true.

*Id.* at 99–100. The record reflects that Geller objected to this latter line of questioning but the trial court overruled such objection.

Here, Moffitt contends that his trial counsel rendered ineffective assistance because he failed to prepare him to testify at

trial and because he did not object to the State's questions regarding his prior criminal history. At the post-conviction hearing, Geller testified that he "did not prep" Moffitt for trial. P–CR Tr. at 5. Assuming arguendo that Geller's failure to prepare Moffitt to testify constituted deficient performance, Moffitt is still not entitled to relief because he has not shown that, but for counsel's unprofessional errors, the result of his jury trial would have been different. In particular, Moffitt has not and, indeed, cannot demonstrate that his in-court responses would have been different had counsel properly prepared him for trial.

 In addition, Moffitt asserts that his trial counsel performed ineffectively by failing to object to the State's questions regarding his criminal history. When an appellant brings an ineffective assistance of counsel claim based upon trial counsel's failure to make an objection, the appellant must demonstrate that the trial court would have sustained a proper objection. *Glotzbach v. State*, 783 N.E.2d 1221, 1224 (Ind.Ct.App.2003).

 Here, at the post-conviction hearing, Geller testified that he did not object to the State's inquiries regarding Moffitt's prior criminal history because Moffitt had opened the door to such questions on direct and redirect. It is well settled that a defendant may open the door to questions otherwise not admissible under the rules of evidence. *Jackson v. State*, 728 N.E.2d 147, 152 (Ind.2000) (noting that otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence). In addition, a defendant who, through direct testimony, leaves the trier of fact with a false or incomplete impression of his criminal record may open the door to inquiries into his complete criminal history. *Wales v. State*, 768 N.E.2d 513, 519 (Ind.Ct.App.2002), *affirmed on reh'g*, 774 N.E.2d 116 (Ind.Ct. App.2002), *trans. denied*. However, when a witness does nothing more than acknowledge the fact of a prior criminal conviction, the door is not necessarily opened to cross-examination regarding the details of the conviction. *See Quarles v. State*, 493 N.E.2d 1247, 1247–48 (Ind.1986) (finding that although details of defendant's battery conviction would not be admissible, a follow-up question from defense counsel, "Got in a fight or something?" opened door to cross-examination regarding details of a battery conviction that involved a shotgun).

In the case at bar, our review of the record reveals that Moffitt opened the door to the State's questions when he, first, made the statement that he cannot smoke and, second, spontaneously exclaimed that he was on probation in response to an inquiry regarding "what" he could not smoke. Moreover, the record demonstrates that, at all times relevant to our analysis, the State did not exceed the scope of the already "opened door." As such, Moffitt has failed to demonstrate that the trial court would have sustained counsel's objections had any been made and, thus, Moffitt did not receive ineffective assistance of trial counsel on this issue.

### c. *Failure to Have Anderson and Thompson Testify at the Suppression Hearing*

 Moffitt further argues that he received ineffective assistance because trial counsel failed to have Anderson and Thompson testify at the suppression hearing. Specifically, Moffitt contends that Anderson's and Thompson's testimonies would have proven that he was not fighting

but rather that his role in the altercation was simply to break up the fight. However, even assuming that trial counsel performed deficiently by failing to call Anderson and Thompson as witnesses at the suppression hearing, Officer Emminger's eye-witness testimony that Moffitt hit Thompson provided sufficient basis for probable cause that Moffitt engaged in disorderly conduct. Accordingly, Moffitt has failed to demonstrate that he received ineffective assistance of trial counsel on this issue.

### d. Failure to Advise Moffitt of the Terms of the Guilty Plea

█ Lastly, Moffitt maintains that trial counsel rendered ineffective assistance by failing to advise Moffitt that, by pleading guilty to the habitual offender charge, he could receive an enhanced sentence of between four and twelve years. In particular, Moffitt asserts that his trial counsel misadvised him that the maximum enhanced sentence that he could receive was eight years under the plea agreement.[9]

At the post-conviction hearing, Geller testified that he had no recollection of the discussions between him and Moffitt regarding the plea agreement. In light of this testimony, coupled with the trial court's explicit advisement to Moffitt that, by pleading guilty, his penalty would range between four and twelve years, Moffitt's self-serving statement that Geller misinformed him that he could only receive a maximum of eight years fails to demonstrate deficient performance. Because we presume that trial counsel performed effectively, Moffitt has failed to show that trial counsel's representation fell below an objective standard of reasonableness. Accordingly, Moffitt has failed to demonstrate that he received ineffective assistance of counsel on this issue.

For the foregoing reasons, we affirm Moffitt's convictions for possession of cocaine, possession of marijuana, and resisting law enforcement.

Affirmed.

SHARPNACK, J., and MAY, J., concur.

### ORDER

On September 23, 2004, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Verified Motion for Publication of Memorandum Decision. The Appellee states that the Court's decision clarifies existing law and it meets the criteria for publication as set forth in Appellate Rule 65(A). The Appellee asks the Court to publish its decision in this appeal.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Verified Motion for Publication of Memorandum Decision is GRANTED, and this Court's opinion heretofore handed down in this cause on September 23, 2004 marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

All Panel Judges Concur.

---

**9.** Moffitt also argues that trial counsel was ineffective for failing to have the plea agreement reduced to writing. However, Moffitt does not direct us to any statute or precedent, and we have found none, that requires a plea agreement for a habitual offender charge to be in writing. *Cf.* Ind.Code § 35–35–3–3 (requiring plea agreements on underlying felony charges to be in writing). Accordingly, we will not find ineffective assistance on this basis.