**Ronald Michael BERRY, Appellant
(Defendant below),**

v.

**STATE of Indiana, Appellee
(Plaintiff below).**

No. 45S00–9610–CR–632.

Supreme Court of Indiana.

Dec. 30, 1998.

Mark A. Bates, Appellate Public Defender, Crown Point, for Appellant.

Jeffrey A. Modisett, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Defendant Ronald Michael Berry appeals his convictions and sentence imposed for the killing of his mother, father and grandmother. He contends that testimony that he had threatened to kill his parents and evidence seized from his van and backpack were improperly admitted at trial. He also contends that his sentence is manifestly unreasonable. Because we find the testimony and evidence was admitted in accordance with applicable constitutional and evidentiary requirements and that the sentence was not manifestly unreasonable, we affirm.

We have jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

*Background*

On July 30, 1995, a van similar to the one driven by defendant was seen driving at a high rate of speed away from the Lake County home defendant shared with his grandmother, parents and brother. Several hours later, the bodies of the grandmother and parents were found inside, killed by multiple gunshot wounds.

Five days later, defendant was observed by police driving his van in Jasper County. A high speed, multi-county chase ensued, ending in a wreck. Defendant managed to escape on foot.

Two weeks later, defendant had an encounter with local police in Illinois who were unaware of his identity. After some discussion, defendant's backpack was searched and a handgun discovered. Defendant was ar-

rested on a weapons charge and ultimately returned to Indiana for trial for the three murders.

At trial, evidence discovered in the search of the wrecked van and the handgun discovered in the search of the backpack were admitted over defendant's objection. Defendant was found guilty of the three murders. He was sentenced to 55 years for the murder of each parent, to be served concurrently, and 65 years for the murder of his grandmother, to be served consecutively to the first term.

## I

■ At trial, defendant's brother testified about the relationship among defendant and the other members of his family prior to the murders. According to the brother, there had been an argument between the defendant and his parents approximately six months prior to the murders, in which defendant had said, "I will kill you all and then leave." The brother's testimony as to this statement was admitted over defense objection at trial. Defendant argues that the trial court committed reversible error because the statement's probative value was substantially outweighed by the danger of unfair prejudice.

Indiana Evidence Rule 404(b) proscribes the use of evidence of wrongs or acts to prove the character of a person in order to show action in conformity therewith. Evidence Rule 403 authorizes the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice. While defendant mentions Rule 404(b), he makes his principal argument on this issue under Rule 403. He contends his "I will kill you and then leave" statement was just an episode of momentary anger that did not constitute a real threat. Indeed, his brother testified that he thought defendant was just "blowing off steam," not actually threatening their parents. Because the statement was not a real threat, defendant maintains, its relevance was slight. But because the jury might well have drawn an inference of bad character from the evidence of the threat,

defendant argues, it caused him substantial unfair prejudice.

We recently faced the question of the admissibility of evidence of threats of violence by a defendant against his eventual victim made two months before a murder. *Ross v. State,* 676 N.E.2d 339 (Ind.1996). We held that the trial court did not abuse its discretion in finding the threats admissible. Specifically, we found that the danger of unfair prejudice from the threats in that case did not outweigh their probative value. *Id.* at 346.

We reach the same result here. While the threat was admittedly more remote in time than that in *Ross* (six months here vs. two months in *Ross*) and perhaps more equivocal ("blowing off steam"), this evidence was presented as part of more general testimony about the relationship between the defendant and the rest of his family. This testimony indicated that relations were strained and that the defendant often argued with his parents about his lifestyle, particularly his failure or refusal to find employment. There was no objection to this more general testimony of strained relations, only to the specific threat. For the same reasons we did so in *Ross,* we find that the trial court did not abuse its discretion in admitting the specific threat. It showed the degree to which relations had become strained. And as to the seriousness of the threat, that was a matter of weight for the jury to decide.

## II

Following the high speed chase of defendant's van and his escape, the police impounded the van and searched it. Later, when the Illinois police confronted defendant, they searched his backpack. Evidence obtained in both searches was admitted at trial over defense objection. Defendant contends that the trial court committed reversible error by admitting this evidence because it was obtained in unconstitutional searches.

■ The Fourth Amendment[1] protects persons from unreasonable search and sei-

---

1. The Fourth Amendment to the United States Constitution provides the following:

The right of the people to be secure in their persons, houses, papers, and effects, against

zure and this protection has been extended to the states through the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). As a general rule, the Fourth Amendment prohibits a warrantless search. *Brown v. State,* 691 N.E.2d 438, 443 (Ind.1998) (citing *Perry v. State,* 638 N.E.2d 1236, 1240 (Ind.1994); *Stallings v. State,* 508 N.E.2d 550, 552 (Ind. 1987)). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.* (citing *Stallings,* 508 N.E.2d at 552; *Short v. State,* 443 N.E.2d 298, 303 (Ind.1982)). *See Murrell v. State,* 421 N.E.2d 638, 640 (Ind. 1981) (citing *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), overruled on other grounds, *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)) (where a search and seizure is effected without a search warrant, the state bears the burden of proving the search "fell within one of the well delineated exceptions to the warrant requirement"). Probable cause is a recognized exception. *Robles v. State,* 510 N.E.2d 660, 664 (Ind.1987). In addition, a police stop and limited search may be authorized on reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The legality of the search of the van need not detain us. It is well established that driving at a high rate of speed to escape from the police establishes the probable cause necessary to justify a warrantless search of the vehicle. *Higgason v. State,* 523 N.E.2d 399, 401 (Ind.1988); *Perrault v. State,* 490 N.E.2d 322, 325 (Ind.1986).

The search of the backpack is a more complicated question. At the time the Illinois police searched his backpack, defendant was not under arrest; the police were not aware that a warrant had been issued for his arrest in Indiana; and the police did not consider him dangerous. As defendant makes his argument, a concern arises over warrantless police searches of women's purs-

es, students' backpacks and executives' briefcases. The new U.S. Supreme Court case on automobile searches, while not exactly on point, heightens our sensitivity. *See Knowles v. Iowa,* —— U.S. ——, ——, 119 S.Ct. 484, 486, 142 L.Ed.2d 492, —— (1998) (full search of an automobile pursuant to issuance of a citation for speeding violated Fourth Amendment).

■ We generally believe that circumstances that justify a *Terry* stop and search of a person for a weapon do not automatically justify examination of the contents of items carried by that person such as purses, backpacks or briefcases. As commentators have noted, police officers can often protect themselves from any risk that the item might contain a weapon by simply putting it out of the person's reach. *See* 4 Wayne R. LaFave, *Search and Seizure* § 9.5(e) (1996). But in this case we do find the search justified.

■ Following a report of a person picking through the trash cans at a grocery store, a town police officer discovered defendant sleeping under some bushes. It was about 10:30 p.m. and drizzling and the defendant appeared extremely tired. The officer suggested that defendant might want to sleep under the local park shelter. Defendant demurred. When asked to explain his presence, defendant said that he had crashed his motorcycle on the outskirts of town. Defendant was unable to produce a driver's license and the name and address defendant gave the officer did not check out. Meanwhile, at the request of the town officer, a county sheriff's deputy had been patrolling the area looking for the crashed motorcycle—unsuccessfully. The deputy eventually joined the defendant and officer. After some discussion, the deputy and defendant headed to her patrol car to go looking for the motorcycle together. (It appears that defendant simply acquiesced to the deputy's instructions in this regard.) The deputy picked up defendant's backpack upon which he had been sitting on and found it to be very heavy. When they reached the car, she placed the pack on the car and "it clunked as if some-

unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

thing metal were in it." The deputy searched both the defendant and the backpack "for officer protection;" the deputy testified that it was the policy of her sheriff's department to search everyone who is placed in their vehicles for whatever reason. The search of the backpack uncovered the handgun and ammunition. Defendant was placed under arrest on an Illinois weapons charge.

We find that *Owens v. State*, 497 N.E.2d 230 (Ind.1986), controls the outcome here.[2] In *Owens*, the defendant was stopped on the street by a police officer within an hour of a robbery five blocks away. Defendant matched the description of the robbery suspect, had no identification, and gave different answers when asked his address. The police officer placed defendant's bag, which he said contained laundry, on the police car and "heard the sound of metal striking metal." *Owens*, 497 N.E.2d at 232. The subsequent search revealed a sawed-off shotgun. We held the stop valid under *Terry* and that the search of the bag was reasonable for the police officer's own protection. *Id.*

We believe that the reasonable suspicion which gives authority to a *Terry* stop does not, without more, authorize the examination of the contents of items carried by the suspicious person. But where either the suspicion that criminal activity may be afoot or a concern over the possibility of harm is reasonably heightened during the stop, the police are authorized to search such items within the suspicious person's immediate control. We find that to be the case here and hold that the trial court did not abuse its discretion in denying the motion to suppress.

### III

■ The trial court imposed concurrent presumptive sentences of 55 years for the murder of each of defendant's parents and an enhanced sentence of 65 years for the murder of defendant's grandmother, to be served consecutively to the 55–year sentences. The defendant maintains that this sentence, consisting of 110 years of executed time, was manifestly unreasonable.

■ The Indiana Constitution authorizes this court to review and revise sentences. Ind. Const. art. VII, § 4. Sentencing is within the discretion of the trial court and our court will not revise a sentence unless it is manifestly unreasonable. Indiana Appellate Rule 17(B). The trial court must include within the record a statement of its reasons for selecting the sentence it imposes if the court finds aggravating or mitigating circumstances. Ind.Code § 35–38–1–3 (1993); *Harris v. State*, 659 N.E.2d 522, 527–28 (Ind. 1995).

The trial court identified as aggravating circumstances: the defendant's prior criminal history; the grandmother's age (81); and the fact that the grandmother was in a kneeling position (the trial court characterized it as a "praying" position) when killed. The trial court also identified the defendant's mental state as a mitigating circumstance. Defendant acknowledges that grandmother's age was a valid aggravating circumstance. But he contends that he had no criminal history prior to this incident. And he argues that the fact of grandmother's praying or kneeling position should not be used as an aggravating circumstance without some greater certainty about what she was actually doing at the time of her death.

Defendant asks that we re-weigh the aggravating and mitigating circumstances in this light and impose concurrent sentences. We believe the trial court's sentencing statement provides ample justification for the sentence imposed given the character of the defendant and nature of his crime. We decline to find the sentence manifestly unreasonable.

### Conclusion

We affirm defendant's convictions and sentence.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

2. There was a warrant outstanding for defendant's arrest at the time of the search but the Illinois authorities were not aware of it. The trial court held that knowledge of the existence of the warrant could be imputed to the Illinois police. The State does not argue that the search was valid on this basis and we render no opinion on it.