# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**STUART K. BAGGERLY**
Bloomington, Indiana

**NOAH T. WILLIAMS**
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ADAM MILLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A05-1211-CR-560 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Marc R. Kellams, Judge
Cause No. 53C02-1101-CM-98

**July 30, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Adam Miller (Miller), appeals the trial court's denial of his motion to suppress.

We reverse.

## ISSUE

Miller raises four issues, one of which we find dispositive and restate as the following: Whether the trial court erred by denying his motion to suppress.

## FACTS AND PROCEDURAL HISTORY

On January 9, 2011, Officer Jordan Hasler of the Bloomington Police Department (Officer Hasler) was patrolling in his vehicle when he saw a vehicle driven by Miller. After confirming that the vehicle's license plate sticker had expired, he initiated a traffic stop of Miller's vehicle. Officer Hasler saw Miller reach toward the right side of the car. Miller turned into a nearby restaurant parking lot and parked his car in a handicapped parking space, reaching toward the left side of the car as he did so.

Officer Hasler exited his vehicle and approached Miller's vehicle on the passenger side. Miller exited his car, coming out all the way out as he saw Officer Hasler at the rear right bumper. Miller appeared irate and Officer Hasler commanded him to return to the inside of the car. Miller continued to exit the car three more times, with Officer Hasler commanding him to return. However, on the fourth time, Officer Hasler handcuffed Miller outside the car. The parking lot was filled with people during this time.

2

Officer Hasler commenced a patdown of Miller's clothing. He found no weapons but noticed the smell of burnt marijuana on Miller's clothes. Officer Hasler asked Miller why he smelled of marijuana and Miller replied that he did not smoke marijuana and that his father was a police officer. Officer Hasler asked Miller whether he had any "guns, knives, needles […] rocket launchers or grenades in his car." (Transcript p. 10). Miller responded, "none that [Officer Hasler] needed to know of." (Tr. p. 10). Officer Hasler did not believe this was a common answer and was concerned that Miller may have a weapon.

Additional officers arrived at the scene. Officer Hasler determined that the car was registered to Miller, but pursuant to Bloomington Police Department policy, decided to have the vehicle towed because of its expired license plate sticker. Pursuant to policy, the officers began an inventory search of Miller's car prior to towing. Officer Hasler issued Miller a citation. Miller was released from his handcuffs and told that he was free to leave. Miller said that he needed his cell phone and backpack which were still inside his car.

Officer Hasler retrieved the backpack and searched it for weapons. Inside the backpack, Officer Hasler saw two containers held together with a rubber band: a transparent Tupperware container that had green residue which Officer Hasler believed to be marijuana, and an opaque "wooden container that contained a smoking device that emitted burnt marijuana odor." (Tr. p. 13).

Miller was arrested for possession of paraphernalia and the officers continued their inventory search of Miller's vehicle. Officer Hasler took Miller's car key to open the glove box in his car. Inside, a loaded handgun and a magazine containing 30 rounds of ammunition was found. Miller had a license to possess the handgun. Approximately 45 minutes to an hour elapsed from the beginning of the traffic stop to Miller's eventual booking at jail.

On January 10, 2011, the State filed an Information charging Miller with Count I, possession of paraphernalia, a Class A misdemeanor, Ind. Code § 35-48-4-8.3(a)(1). On November 7, 2011, Miller filed a motion to suppress the evidence, alleging violations of both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. On February 13, 2012, a hearing was held with Officer Hasler and Miller providing testimony. The trial court took the matter under advisement. On February 21, 2012, Miller filed a brief in support of his motion to suppress.

On February 24, 2012, the Stated filed a motion to reopen evidence. The State alleged that Officer Hasler had additional testimony required to resolve an issue concerning the level of invasiveness of Officer Hasler's search of the backpack. On February 27, 2012, Miller opposed the State's motion alleging prejudice if the State was permitted to present additional evidence after Miller had filed his memorandum in support of his motion to dismiss. On March 15, 2012, the trial court held an additional hearing. Over objection, the State briefly examined Officer Hasler on his experience with marijuana smoking paraphernalia, particularly the paraphernalia found in Miller's

4

backpack. Miller then extensively cross-examined Officer Miller on the paraphernalia, the inventory search, his questioning of Miller regarding weapons, and his experience with hidden weapons.

On August 8, 2012, the trial court issued its Order denying Miller's motion to suppress. On August 24, 2012, Miller filed a motion to correct error and on September 7, 2012, filed a motion to certify the trial court's Order for interlocutory appeal. On October 3, 2012, the trial court denied Miller's motion to correct error and certified its Order for interlocutory appeal. On December 14, 2012, we accepted interlocutory appeal.

Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Motion to Suppress*

Miller argues that the trial court abused its discretion by denying his motion to suppress. He contends that Officer Hasler's search of his backpack violated his rights under the Fourth Amendment of the United States Constitution. Specifically, he asserts that Officer Hasler's warrantless search of the backpack was not based on a reasonable suspicion of criminal activity or reasonable safety concerns. He also contends that the automobile exception to the Fourth Amendment does not apply.

We review a denial of a motion to suppress similar to other sufficiency matters. *Dora v. State*, 957 N.E.2d 1049, 1052 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, but consider conflicting evidence in the light most

favorable to the trial court's ruling. *Id.* Uncontested evidence, however, is viewed in favor of the defendant. *Id.*

## A. *Terry Stop*

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures; its protections extend to the States through the Fourteenth Amendment. *Id.* Warrantless searches are generally prohibited under the Fourth Amendment. *Berry v. State*, 704 N.E.2d 462, 465 (Ind. 1998). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.*

In upholding the search of Miller's backpack, the trial court relied primarily upon the United States Supreme Court decision in *Terry v. Ohio*, 392 U.S. 1 (1968), which permits a warrantless but "reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.* at 27. "The officer need not be absolutely certain that the individual is armed; rather, the issue is whether a reasonable prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

In *Berry*, a police officer found Berry sleeping under some bushes. *Berry*, 704 N.E.2d at 465. Berry was not under arrest nor considered dangerous. *See id.* After his story did not check out, the officer and Berry went to the officer's patrol car. *Id.* The officer picked up Berry's backpack, placed it on her patrol car, and heard a metallic

6

sound. *Id*. at 465-66. The police officer searched both Berry and the backpack and found a handgun and ammunition. *Id*. at 466. The *Berry* court noted that, "circumstances that justify a *Terry* stop and search of a person for a weapon do not automatically justify examination of the contents of items carried by that person such as purses, backpacks or briefcases." *Berry*, 704 N.E.2d at 465. However, "where either the suspicion that criminal activity may be afoot or a concern over the possibility of harm is reasonably heightened during the stop, the police are authorized to search such items within the suspicious person's immediate control." *Id*. at 466.

The *Berry* court relied on *Owens v. State*, 497 N.E.2d 230, 232 (Ind. 1986), to uphold the search. In *Owens*, police stopped Owens based on a description of a robbery suspect. *Id*. at 231. After his story did not check out, an officer placed Owens' bag on the patrol car and heard a metallic sound. *Id*. A subsequent patdown and search of the bag revealed a sawed-off shotgun. *Id*. The distinguishing feature in both cases was that the police could point to an articulable fact in support of "a concern over the possibility of harm [being] reasonably heightened during the stop." *Berry*, 704 N.E.2d at 466.

Because Officer Hasler did not point to articulable facts supporting either a suspicion of criminal activity or a concern over the possibility of harm, we conclude that Officer Hasler's search of Miller's backpack was impermissible under the Fourth Amendment. Miller was initially detained by Officer Hasler for driving with an expired license plate registration sticker. Due to Miller's unusual behavior, he was restrained and frisked for weapons by Officer Hasler. After Miller refused to consent to a search of his

7

vehicle, Miller's vehicle was to be inventoried and towed pursuant to Bloomington Police Department policy. Officer Hasler issued him a citation and Miller was released from handcuffs and told that he was free to go. Based upon Miller's request, Officer Hasler retrieved the backpack from the vehicle but searched his backpack. In explaining why he searched Miller's backpack, Officer Hasler testified on cross-examination as follows:

> [OFFICER HASLER]: […]. I was going to search for weapons due to the fact that it was in the vehicle and it was being inventoried.
>
> [MILLER]: So is it a – sorry, was it a search for weapons or an inventory?
>
> [OFFICER HASLER]: If a person comes to me and says I want a backpack or I want a hat in my car and it's being inventoried, I'm going to search it for weapons prior to giving it back to him because I'm not going to hand him a case or a back pack after inventory in it that has a handgun or knife or something inside of it, for my safety.
>
> …
>
> [MILLER]: Okay. If I were a student, would you refuse to let me get my books out of the car before your searched the book bag?
>
> [OFFICER HASLER]: I would search […] simply for our safety because you could have razor blades or other sharp objects or cut out, you know, a handgun could be in a book, I mean.
>
> [OFFICER HASLER]: Would you say if you stopped [the trial court judge] and his tags were expired and he said, hey I'd like to get my briefcase out of there. It's got my files for [c]ourt today. You'd search it before you handed it to him?
>
> [OFFICER HASLER]: Yes, sir.

(Tr. pp. 21, 24).

Unlike *Owens* and *Berry*, the traffic stop here terminated with the issuance of a citation. Officer Hasler did not point to any suspicion that criminal activity was afoot,

8

nor any facts in support of "a concern over the possibility of harm [being] reasonably heightened during the stop." *Berry*, 704 N.E.2d at 466. Instead, Officer Hasler's testimony demonstrates that his election to search the backpack was based upon procedure. We conclude that this is insufficient under these circumstances.

In defense of Officer Hasler's search, the State points to Miller's erratic behavior prior to and immediately after the stop. As with many search cases and probable cause issues, the timing of events and the officer's knowledge are critical in determining the validity of the search. *Sears v. State*, 668 N.E.2d 662, 666 (Ind. 1996), *overruled on other grounds*, *Scisney v. State*, 701 N.E.2d 847, 849 (Ind. 1998). Officer Hasler's issuance of the citation ended the encounter and therefore the *Terry* stop; Miller had been released from his handcuffs and told that he was free to go. Miller's erratic behavior was too attenuated to furnish either a suspicion of criminal activity or belief that it posed a safety threat to trigger a new *Terry* stop after having been released. We therefore conclude that Officer Hasler's search of Miller's backpack was impermissible under the Fourth Amendment.[1]

## B. *Automobile Exception*

In upholding the search of Miller's backpack, the trial court also relied on the automobile exception to the Fourth Amendment. The trial court reasoned that Officer

---

[1] Because we conclude that the search of Miller's backpack and subsequent discovery of paraphernalia were improper under the Fourth Amendment, we do not address the parties' arguments on whether the search comported with Article 1, Section 11 of the Indiana Constitution. Further, because we reverse the trial court, we do not discuss whether the trial court abused its discretion by reopening the evidence on the motion to suppress.

9

Hasler's search was supported by probable cause based upon Officer Hasler's prior observation that Miller's clothes smelt of burnt marijuana. On appeal, Miller argues that Officer Hasler's search was not based on probable cause.

A search falls within the automobile exception when a vehicle is readily mobile and there is probable cause to believe it contains contraband or evidence of a crime. *See Meister v. State*, 933 N.E.2d 875, 878-79 (Ind. 2010). If probable cause exists, the police have the authority to search a vehicle and all containers located therein. *See Krise v. State*, 746 N.E.2d 957, 962 (Ind. 2001). However, "the scope of a warrantless search based on probable cause is no narrower – and no broader – than the scope of a search authorized by a warrant supported by probable cause." *Id*. at 749.

The trial court concluded that "the distinctive odor of burnt marijuana emanated from [Miller's] clothes" "justifie[d] a search of the vehicle and containers therein based on probable cause." (Appellant's App. p. 14). It also reasoned that Officer Hasler's observation of green residue inside the Tupperware container found in Miller's backpack "bolsters finding probable cause." (Appellant's App. p. 14). We disagree.

"Facts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate." *Meister*, 933 N.E.2d at 879. Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to believe that a search would uncover evidence of a crime. *Id*. Officer Hasler noticed the smell of burnt marijuana emanating from Miller's clothes prior to

restraining him. Officer Hasler asked Miller why his clothes smelled of burnt marijuana and Miller replied that he did not smoke marijuana and that his father was a police officer. Following his patdown of Miller's clothes, Officer Hasler did not find marijuana. Thereafter, Officer Hasler issued him a citation and told Miller that he was free to leave.

We have recognized that the odor of marijuana on a person's breath and emanating from inside a vehicle may give rise to probable cause that a person possesses marijuana. *Edmond v. State*, 951 N.E.2d 585, 590-91 (Ind. Ct. App. 2011). At the same time, "[b]ecause the odor of burnt marijuana might linger in a vehicle for a period of time, that odor does not necessarily indicate illegal activity by a current occupant." *Id.* at 591. Here, there is no evidence that the odor of marijuana emanated from the vehicle. Following Miller's request, Officer Hasler entered Miller's vehicle to retrieve the backpack yet he did not testify that the vehicle smelled of marijuana. To the extent that the State argues that Miller's prior actions supplied probable cause, we again conclude that these circumstances are too attenuated given that Officer Hasler's patdown found no marijuana and Miller was told that he was free to leave. Because we conclude that Officer Hasler provided no facts and circumstances that would lead a reasonably prudent person to believe that a search would uncover evidence of a crime, probable cause to search Miller's backpack did not exist. As a result, the automobile exception to the Fourth Amendment cannot be applied to uphold the search. Therefore, the trial court erred by denying Miller's motion to suppress.

CONCLUSION

Based on the foregoing, we conclude that the trial court erred by denying Miller's motion to suppress.

Reversed.

BROWN, J. concurs

BRADFORD, J. dissents with separate opinion



FILED

Jul 30 2013, 7:45 am

CLERK
of the supreme court,
court of appeals and
tax court

**IN THE**
**COURT OF APPEALS OF INDIANA**

ADAM MILLER,                                  )
                                              )
    Appellant-Defendant,                 )
                                              )
    vs.                                  )    No. 53A05-1211-CR-560
                                              )
STATE OF INDIANA,                             )
                                              )
    Appellee-Plaintiff.                  )

**BRADFORD, Judge, dissenting**

While I agree with the majority that Officer Hasler's search of Miller's backpack was not justified by officer safety concerns or as part of an inventory search of the impounded car, I believe that it was supported by probable cause that contraband might be found within. Also, in addressing arguments not reached by the majority, I would conclude that Officer Hasler's search did not violate the Indiana Constitution and that the

13

trial court did not abuse its discretion in reopening the evidence at Miller's suppression hearing.

## I. Fourth Amendment

The State argues that Officer Hasler's search of Miller's backpack was justified pursuant to the automobile exception to the Fourth Amendment.

> As a general rule, the Fourth Amendment prohibits warrantless searches, but there are exceptions to the warrant requirement. *Black v. State*, 810 N.E.2d 713, 715 (Ind. 2004)….
>
> The automobile exception was first applied in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This exception was originally based on ready mobility and exigent circumstances. *See Coolidge v. New Hampshire*, 403 U.S. 443, 459-60, 91 S.Ct. 2022, 2034-35, 29 L.Ed.2d 564, 579 (1971). The United States Supreme Court later made clear that separate exigent circumstances are not required for the automobile exception to apply because "[t]he mobility of automobiles … 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.'" *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406, 413 (1985) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976)); *see also Maryland v. Dyson*, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442, 445 (1999) ("[T]he 'automobile exception' has no separate exigency requirement…. [I]n cases where there [is] probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.'") (quoting *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164-65, 72 L.Ed.2d 572, 584 (1982)); *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031, 1036 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the

vehicle without more."). Furthermore, the exception is based not only on ready mobility but also on the lesser expectation of privacy with respect to automobiles, so that even where an automobile is not immediately mobile, a warrantless search may still be justified. *Labron*, 518 U.S. at 940, 116 S.Ct. at 2487, 135 L.Ed.2d at 1036.

In *Dyson*, the United States Supreme Court held that police need not obtain a search warrant before searching a vehicle that they have probable cause to believe contains illegal drugs. The Court emphasized that the automobile exception "does not have a separate exigency requirement," *id.*, 527 U.S. at 467, 119 S.Ct. at 2014, 144 L.Ed.2d at 445, and that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." *Id.* (quoting *Labron*, 518 U.S. at 940, 116 S.Ct. at 2485, 135 L.Ed.2d at 1035-36).

*Myers v. State*, 839 N.E.2d 1146, 1150-51 (Ind. 2005).

I believe that Officer Hasler had ample probable cause to search Miller's vehicle and its contents, including the backpack. In cases where police detected the odor of burnt marijuana emanating from a motor vehicle, Indiana Courts, adhering to the majority rule, have consistently held that probable cause to search the car existed. *See, e.g.*, *State v. Hawkins*, 766 N.E.2d 749, 752 (Ind. Ct. App. 2002) ("[W]e have no hesitation in deciding that when a trained and experienced police officer detects the strong and distinctive odor of burnt marijuana coming from a vehicle, the officer has probable cause to search the vehicle."), *trans. denied*.

While recognizing that there is nothing in the record to indicate that Officer Hasler detected the odor of burnt marijuana emanating from Miller's vehicle, I would still

conclude that, under the circumstances of this case, probable cause existed to search it for contraband. First and foremost, Officer Hasler detected the odor of burnt marijuana on Miller's person, which raises a reasonable inference that he had smoked marijuana somewhat recently and might be in possession of contraband, either on his person or in the vehicle he recently exited.

Moreover, Miller's actions before, during, and after the traffic stop were suspicious and raised a reasonable inference that his vehicle contained contraband. After Officer Hasler activated his lights, he noticed Miller "abruptly lean[] down as if he was reaching for something or doing something to the right side as he turned into the parking lot." Tr. p. 7. After Miller quickly parked his vehicle, Officer Hasler observed Miller "reach[] down as if he was reaching to the left side[.]" Tr. p. 7. When Officer Hasler approached Miller's car on the passenger side and had reached the back quarter panel, Miller "abruptly exited the vehicle." Tr. p. 8. Although Miller briefly returned to his vehicle when advised to by Officer Hasler, he exited again almost immediately when Officer Hasler started toward the passenger-side window. Miller sat down a third time in the vehicle, but, again, almost immediately exited as Officer Hasler started to walk around the rear of the vehicle. Officer Hasler advised Miller once to stay seated in the vehicle, but Miller exited almost immediately for a fourth time.

In my view, Miller's actions also give rise to a reasonable inference that his vehicle contained contraband. Miller's furtive actions before and after parking his

16

vehicle are entirely consistent with a person secreting contraband that might otherwise be plainly visible to a person standing outside looking into the vehicle, as Officer Hasler was about to do. Miller's refusal to remain in his vehicle, despite being advised to several times, also leads to a reasonable inference that there was something within that he did not want Officer Hasler to see or otherwise become aware of. In short, Miller seemed to being doing everything he could to keep Officer Hasler away from his vehicle.[2] Miller's actions, along with the odor of marijuana emanating from his person, provided ample probable cause to search his vehicle and containers within for illegal drugs. It is not relevant to our analysis that Officer Hasler believed that his search of Miller's backpack was justified as an inventory search. Officer's Hasler's subjective beliefs, quite simply, have no legal effect. *See, e.g.*, *Moffitt v. State*, 817 N.E.2d 239, 246 (Ind. Ct. App. 2004), *trans. denied*. I believe that objective probable cause existed to search the backpack, and so Officer Hasler's search, whatever his stated justification, was constitutional.

## II. Article I, Section 11

I would also conclude that the search of Miller's backpack did not violate Article I, Section 11, of the Indiana Constitution, which provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no

---

[2] It is also worth noting that had Miller stayed seated in his vehicle as advised, Officer Hasler would likely have first detected the odor of marijuana emanating from within the vehicle, which would have unquestionably justified a search of the vehicle and its contents. As such, ruling in Miller's favor would be, in effect, to reward him for refusing to cooperate with law enforcement, an outcome I cannot endorse.

warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The Indiana Supreme Court has noted that

[w]hile almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001); *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999); *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (citing *Moran*, 644 N.E.2d at 539). "We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* at 360. In *Litchfield*, we summarized this evaluation as follows:

> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

*Id.* at 361.

*Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005).

18

Although Officer Hasler's stated reason for searching Miller's backpack was concern for his safety, there was nonetheless a relatively high degree of suspicion that a criminal violation had occurred. Miller was acting suspiciously, repeatedly failing to heed Officer Hasler's requests that he remain in his vehicle, and he smelled of burnt marijuana. Miller seemed to be very intent on keeping Officer Hasler away from this vehicle, raising suspicion that it might contain contraband. *See, e.g.*, *Edmond v. State*, 951 N.E.2d 585, 592 (Ind. Ct. App. 2011) (concluding that degree of suspicion weighed in State's favor where there was probable cause to believe illegal drugs were present). The degree of intrusion into Miller's activities was slight. Officer Hasler's search of Miller's backpack was not invasive or humiliating, did not involve searching his person, and apparently did not lengthen his detention appreciably. Finally, I would conclude that the extent of law enforcement needs was high enough to weigh in the State's favor as well. While I agree that Officer Hasler did not have sufficient justification to search the backpack for officer safety reasons, there was ample reason to believe that it might have contained illegal drugs, in whose removal from the streets police have an obvious interest. Under the totality of the circumstances, I would conclude that Officer Hasler's search of Miller's backpack was reasonable pursuant to Article I, Section 11.

### III. Reopening the Evidence on the Motion to Suppress

19

Finally, Miller contends that the trial court abused its discretion in allowing the State to reopen its evidence and present additional testimony from Officer Hasler at the suppression hearing.

> [T]he granting of permission to reopen a case is within the discretion of the trial court and the decision will be reviewed only to determine whether or not there has been an abuse of that discretion. *Gorman v. State* (1984), Ind., 463 N.E.2d 254, 257. Among the factors which weigh in the exercise of discretion are whether there is any prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request. *Flynn v. State* (1986), Ind., 497 N.E.2d 912, 914. Two conditions must be shown to exist to justify a court of appellate jurisdiction in setting aside a ruling made by a trial court in the exercise of judicial discretion: 1) the action complained of must have been unreasonable in light of all attendant circumstances or it must have been clearly untenable or unreasonable; and 2) the action was prejudicial to the rights of the complaining party. *Flynn*, 497 N.E.2d at 916, citing *Allman v. State* (1968), 253 Ind. 14, 19-20, 235 N.E.2d 56, 59.

> A party should be afforded the opportunity to reopen its case to submit evidence which could have been part of its case in chief. *Gorman*, 463 N.E.2d at 257. Given [a] claim of insufficient evidence, "the State should have had an opportunity to supply such insufficiency or reopen the case for that purpose, even after it had rested, since a trial is not a game of technicalities, but one in which the facts and truth are sought." *Eskridge v. State* (1972), 258 Ind. 363, 369, 281 N.E.2d 490, 493.

*Ford v. State*, 523 N.E.2d 742, 745-46 (Ind. 1988).

I would conclude that the trial court did not abuse its discretion in allowing the State to reopen its evidence and present further testimony from Officer Hasler. In so

20

concluding, I find the preliminary stage of the litigation to be dispositive. Because a pretrial suppression proceeding determines nothing with finality and retains no viability once the case goes to trial, the State could have simply introduced the additional evidence at that point if the trial court had denied its pretrial request.

> Once the matter proceeds to trial, the question of whether the trial court erred in denying a motion to suppress is no longer viable. *See Beverly v. State*, 801 N.E.2d 1254, 1260 n.5 (Ind. Ct. App. 2004), *trans. denied*; *Packer v. State*, 800 N.E.2d 574, 578 (Ind. Ct. App. 2003), *trans. denied*; *Washington* [*v. State*], 784 N.E.2d [584,] 586 [(Ind. Ct. App. 2003]. The logic behind this rule is that "'a ruling upon a pretrial motion to suppress is not intended to serve as the final expression concerning admissibility.'" *Joyner v. State*, 678 N.E.2d 386, 393 (Ind. 1997) (quoting *Gajdos v. State*, 462 N.E.2d 1017, 1022 (Ind. 1984)). In other words, the preliminary ruling on the defendant's motion to suppress is subject to modification at trial. *Id.*

*Kelley v. State*, 825 N.E.2d 420, 424 (Ind. Ct. App. 2005). Given that the State could just have presented Officer Hasler's testimony at trial had the trial court denied its request to reopen its evidence, it would have made little sense to do so. I would therefore conclude that the trial court did not abuse its discretion in this regard.

CONCLUSION

I would conclude that Officer Hasler's search of Miller's backpack violated neither the Fourth Amendment of the United States Constitution nor Article I, Section 11, of the Indiana Constitution. I would further conclude that the trial court did not abuse its discretion in allowing the State to reopen its evidence at the suppression hearing.

Consequently, I would affirm the trial court in all respects and must therefore respectfully dissent.